**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2960
_____

SHARIFUL ISLAM MINTU
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A042-951-328)
Immigration Judge:  Honorable John B. Carle

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 3, 2019
Before: MCKEE, COWEN and RENDELL, Circuit Judges

(Opinion filed: July 17, 2019)
_____

OPINION[*]
_____

PER CURIAM

Shariful Mintu petitions for review of a decision by the Board of Immigration

Appeals (BIA).  For the reasons below, we will deny the petition for review.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

Mintu, a citizen of Bangladesh, entered the United States in 1991 as a lawful permanent resident. In 2017, he was charged as removable as an aggravated felon for his conviction for conspiracy to commit bank fraud. Proceeding pro se, Mintu applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). He argued that he would be persecuted in Bangladesh on account of his conversion from Islam to Christianity as well as his marriage to a Christian woman. He also asserted that he would be tortured.

An Immigration Judge (IJ) sustained the charges of removability, having determined that Mintu attempted to cause a loss of more than $10K with his conspiracy to commit bank fraud. After a hearing, another IJ denied Mintu relief from removal. The IJ thoroughly discussed the evidence in the record and found that Mintu had not shown a clear probability of being persecuted by his family or others in Bangladesh on account of his religious conversion or interfaith marriage. The IJ also found that Mintu had not met his burden of demonstrating that he would be tortured if returned to Bangladesh. Moreover, the IJ determined that any torture would not be with the acquiescence of the government.

On appeal, the Board of Immigration Appeals (BIA) agreed with the IJ that the Government need only show that the potential loss from the fraud was more than $10K. The BIA affirmed the IJ's finding that Mintu had not shown that it was likely that his life would be threatened in Bangladesh or that he would be tortured with the acquiescence of

constitute binding precedent.

a public official. Mintu filed a petition for review, and we have jurisdiction under 8 U.S.C. § 1252.

Removability

We exercise de novo review over the BIA's determination that Mintu is an aggravated felon. Singh v. Att'y Gen., 677 F.3d 503, 508 (3d Cir. 2012). Mintu was charged as removable as an aggravated felon pursuant to 8 U.S.C. § 1101(a)(43)(M)(i) and (U) for his conviction for conspiracy to commit bank fraud. Under subsection (M)(i), an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10K is an aggravated felony. Subsection (U) provides that an attempt or conspiracy to commit an aggravated felony is an aggravated felony.

Mintu's offense involved a loan for $98K that was based on false information. The IJ noted that it was clear from the presentence report that Mintu attempted to cause a loss of $98K through fraud and sustained the charges of removability. The BIA agreed that Mintu's conviction fell within subsection (U). We agree with the BIA that Mintu's conviction for conspiracy to commit bank fraud qualifies as an aggravated felony under subsection (U) as a conspiracy to commit an aggravated felony. Mintu stipulated in his plea agreement that the attempted loss was more than $95K. Thus, he conspired to commit a bank fraud involving a loss over $10K.

Mintu argues that the BIA erred in concluding that a potential loss could satisfy the loss amount without examining his intent. He contends that he intended for the loan

3

to be repaid, and it was.[1]  In clarifying that payment of restitution does not negate a

finding of actual loss, we explained in <u>Singh</u> that:

> [W]e agree with the government that payment of restitution should not, and
> does not, negate a loss that actually occurred. . . .  If a bank gives a person
> a loan under false pretenses, then no matter how soon afterwards it detects
> the fraud, whether one minute or one year, an actual loss results because the
> person obtains possession of the loan at the direct deprivation of the bank.
> It doesn't matter how fleetingly the person obtains control. If the person's
> offense deprives the defrauded party of property, *an actual loss* occurs to
> an actual victim under subparagraph (M)(i).

<u>Singh</u>, 677 F.3d at 517–18.  Thus, the repayment of the loan at issue does not undermine

the loss the bank suffered.

Moreover, Mintu pleaded guilty to a conspiracy that involved even higher actual

losses.  In <u>Doe v. Attorney Gen.</u>, 659 F.3d 266, 276 (3d Cir. 2011), the alien pleaded

guilty to aiding and abetting wire fraud.  The plea agreement identified one transaction of

$6K, but the parties stipulated that the alien was responsible for a loss of over $120K.

We held that more than just the one transaction should be considered.

> Because Rodov pled guilty not to a single fraudulent transaction but to
> aiding and abetting the whole of a large-scale criminal endeavor, there is no
> need to decide whether conduct outside the specific offense of conviction
> can be pertinent to the aggravated felony determination. Rodov was in fact
> convicted of committing all of the relevant conduct.

<u>Doe v. Attorney Gen.</u>, 659 F.3d 266, 276 (3d Cir. 2011).  Here, the criminal information

---

[1] The loan was not repaid by Mintu, but rather by his brother-in-law, who was legally
responsible for the loan.  The $98K loan was purportedly to purchase a vehicle but was
actually obtained to allow the brother-in-law to pay off $60K in unsecured credit card
debt at a lower interest rate because the loan was to be secured by the vehicle.  A.R. at
323-24, 489.  As discussed below, the car securing the loan was sold to an unsuspecting

to which Mintu pleaded guilty alleged that Mintu and his co-conspirators fraudulently obtained "hundreds of thousands of dollars" through loan applications and lines of credit. It noted that "[t]he majority of the loans and lines of credit went into default, and the money was not repaid." A.R. at 254. Even if only the intended loss was considered as Mintu suggests, that many of the other fraudulent loans obtained by the conspiracy were not repaid undermines Mintu's argument that he intended that the loan in the count of conviction would be paid back.

Mintu's argument that the BIA ignored the presence of collateral securing the loan is disingenuous and irrelevant. He admitted in his brief before the BIA that the car that was listed as collateral for the loan was sold to an unsuspecting buyer who was given a title that did not reflect the lien. Thus, Mintu appears to argue that this additional act of fraud should undermine any loss suffered by the bank.

### CAT Relief

Because Mintu is removable as an aggravated felon, our jurisdiction is limited to review of legal and constitutional claims. See 8 U.S.C. § 1252(a)(2)(C)&(D). Mintu argues in his brief that the BIA ignored relevant evidence of torture.[2] He asserts that his family will be angry because when he visited in 2009, he refused to convert back to Islam

---

third party.

[2] To be eligible for relief under the CAT, Mintu needed to demonstrate that it is more likely than not that he would be tortured if removed to Bangladesh. 8 C.F.R. § 1208.16(c)(2); 8 C.F.R. § 1208.17(a). He also needed to show, inter alia, that the torture would be inflicted by or with the acquiescence of a public official. Roye v. Att'y Gen., 693 F.3d 333, 341 (3d Cir. 2012).

and marry a Muslim woman. He also cites to evidence in the record of attacks on Christians by extremist groups. However, the BIA discussed the evidence of mistreatment of those who have converted to Christianity from Islam as well as the evidence of violence towards Christians by extremist groups. The probability that torture will occur is a factual finding, which in this case is beyond the scope of our review. Kaplun v. Att'y Gen., 602 F.3d 260, 271 (3d Cir. 2010).

Mintu also argues that the BIA failed to properly analyze the acquiescence prong for CAT relief. However, the BIA agreed with the IJ that Mintu had not met his burden of showing that he would be targeted for torture. As noted above, we may not review this factual determination. The BIA then went on to discuss an additional ground to support its decision: that Mintu had not shown that any torture would be with the acquiescence of a public official. It observed that while corruption and impunity were still problems, the government in Bangladesh had taken steps to protect religious minorities. Mintu's legal challenge to the BIA's acquiescence analysis does not undermine the separate and dispositive factual determination that he had not shown that he would be tortured.

Withholding of removal

In his opening brief, Mintu argues that the BIA failed to properly analyze the

6

acquiescence prong for withholding of removal.[3]  Here, the BIA determined that Mintu had not shown that his life or freedom would be threatened.  As a result, it had no occasion to reach the issue of whether any persecution would be committed by the government or parties the government is unwilling or unable to control.  Thus, Mintu's argument that the wrong standard was applied is without merit.

For the above reasons, we will deny the petition for review.  Mintu's motion to amend his petition for review is denied.  The Government's motion for an extension of time is granted.

---

[3] To establish eligibility for withholding of removal, Mintu needed to demonstrate that it is more likely than not that his life or freedom will be threatened in Bangladesh on account of race, religion, nationality, membership in a particular social group, or political opinion.  See Wang v. Gonzales, 405 F.3d 134, 139 (3d Cir. 2005); 8 U.S.C. § 1231(b)(3)(A).  The persecution must be committed by the government or parties the government is unwilling or unable to control.  Valdiviezo-Galdamez v. Att'y Gen., 502 F.3d 285, 288 (3d Cir. 2007).  We will liberally construe Mintu's argument as contending that the BIA used the wrong standard for determining whether any persecution would be committed by parties the government is unwilling or unable to control.